Mr. Chief Justice, I may have pleased the Court. Exhaustion is the centerpiece of Congress' reforms under the Prison Litigation Reform Act. Yet even with this invigorated exhaustion requirement, prisoner laws still account for an outsized share of filings in federal district courts. A rule that requires a jury trial on intertwined exhaustion issues would increase this burden while incentivizing non-exhaustion and undermining the goals and structure of the PLRA. Respondent would have this Court cast aside the PLRA's goals and structure merely because exhaustion is an affirmative defense. Focusing on this Court's holding in Jones v. Bach, he contends that there is no principled reason for treating PLRA exhaustion differently than other affirmative defenses that are routinely sent to juries when there Jones does not stand for this broad proposition. It is held only that prisoners need not plead exhaustion. And there is a principled reason for treating PLRA exhaustion differently than other affirmative defenses. It is a mandatory prerequisite to suit, so its intended benefits would be entirely undercut by merits discovery and a trial before its resolution. PLRA exhaustion must be resolved by a judge at the early stages of litigation. Contrary to the Sixth Circuit, this does not run afoul of the Seventh Amendment even when there are intertwined facts. The judge's determination on exhaustion does not interfere with the jury's ultimate fact-finding rule because dismissal is typically without prejudice and the judge's determination on exhaustion would not have conclusive effect. Richards, like many other prisoners, can exhaust, come back, and have a jury decide the merits of any viable claims. For this reason, this Court should reverse Sixth Circuit's decision. I welcome the Court's questions. Are exhaustion determinations normally made by the judge? They are, and in fact, lower courts are pretty much in agreement that, at least when there are no intertwined facts, that judges will make those determinations. So what is it about the intertwining of facts that changes the nature of exhaustion? I don't think there's anything that changes the nature of exhaustion. I think what it does is it makes one have to consider the Seventh Amendment now. If there are intertwined facts, is that an implication of the Seventh Amendment? And our position is that it doesn't. Historically, has there been, do we have any analogs that would suggest that this would go to a jury? No, in fact, the opposite is true. Analogs suggest that this would go to a judge. We think that the closest analog, there is no precise analog, there was no exhaustion in 1791. The doctrine hadn't been developed yet. It came as the administrative setting was coming into force. But we know that exhaustion has its roots in equity, and we think that the most, at least appropriate analogs here, are equitable defenses. And equitable defenses that would have been, their key characteristic is a deference to another. Do we really have to get into that? I guess what I was a little confused about from your briefing was that I took you to concede that there's intertwinement here. And if that's the case, we can just assume, I guess, that exhaustion does not entitle you to a jury. That's the part of this that would ordinarily say you don't get a jury. But it's the fact of intertwinement that brings to the fore the question of whether or not the Seventh Amendment has to be satisfied. So we don't really have to worry or think about or rule on whether or not the exhaustion claim gets a jury independent of the other one, right? I don't think the court has to rule on that. I think it's a question that is naturally embedded in the question presented. I understand, but if I assume it, okay, so fine. Aren't we still faced with the question that you present as a matter of your question presented is? Then we have intertwinement of a claim that does not get a jury, the exhaustion claim, with a claim that does. Do you concede that the First Amendment retaliation claim is one that would ordinarily go to the jury? When the right to a jury trial accrues, and exhaustion has been met, I agree that that is a claim that should go to a jury. And this part has been very clear that 1983 claims are entitled to a jury. All right. So we do have the intertwinement, at least you conceded in your brief. And so why wouldn't the sort of standard Beacon Theaters view of how we deal with that situation apply here? Beacon Theaters doesn't apply here for a number of reasons. One, Beacon Theaters was driven by concern for collateral estoppel. Would there be a preclusive effect that would completely cut off any right to have the jury trial on the matter? I don't see that in the opinion. I mean, I see that it talks about preclusive effect, but that didn't necessarily seem to me to be driving the analysis. And we've had a lot of cases that have applied this sort of intertwinement principle in which preclusion really hasn't been the main focus. I think Beacon Theaters itself talked about preclusion, preclusive effect, and that being a concern. And later on, this court in Parkland-Hosiery said, when we looked at Beacon Theaters, which again, this court has said is collateral estoppel is only a flexible, judge-made doctrine. And this court said in Parkland-Hosiery, the concern was collateral estoppel. All right, so why isn't that a case here? I mean, what law do we have that says that an exhaustion determination by a judge in this situation that requires them to find all the facts about whether or not there was actual retaliation, why isn't that preclusive of a later jury trial related to that same issue? What we have here is the flexible doctrine of collateral estoppel and what we know about collateral estoppel and why it's applied and why it doesn't get applied. And one of the big issues here is that you don't, this court has said over and over in cases, and so have the lower courts, that collateral estoppel is not applied when the litigants have not had a full and fair opportunity to litigate. And when a litigant is, either side is litigating exhaustion, they have not had a full and fair opportunity to litigate on the merit, even if there are overlapping facts. Why? Why? If we take your starting proposition, that exhaustion is a judge determination and you've had a full and fair opportunity to litigate it, why wouldn't that, if it's interwound with the merits, why wouldn't you be bound by it? So you go back later, but, and you get exhausted and you come back to court on your substantive decision, like your arguing should be done here, why wouldn't you be bound? There may be factual overlap and we concede that there's intertwined. Assume it's intertwined. I assume everything you say. Our normal preclusion rules would say if you've had a fair and full opportunity to litigate a case, it doesn't mean before a jury. It just means if you were entitled to litigate this issue and you had a full and fair opportunity to litigate it, and you lost on this issue, then you go back and you exhaust and you come back again at the new trial, you would be collaterally estopped. Respectfully, your honor, those, neither side has had a full and fair opportunity to litigate the underlying merits, whether that's... And it has nothing to do with it. It has to do with would you be bound by collateral estoppel. And they would not, respectfully, they would not be bound unless they'd had a full and fair opportunity. They did. On the merits, they have had a full and fair opportunity on exhaustion, and that is different. I was just going to say, I don't understand why you're talking about full and fair opportunity because preclusion requires a judgment. And for exhaustion, you're dismissed with prejudice, so there is no judgment. So even if you filed a later suit, I mean, it is a full and fair opportunity because you didn't have litigated all the way to judgment. I mean, maybe there's a law of the case argument to be made, but I don't see how collateral estoppel... Well, I would agree with that. That's one of the key elements of the test for collateral estoppel. And the other is whether the issue was litigated in the prior litigation and then again in the subsequent litigation. And here you have two separate issues. Under the... Go ahead. Can I go back to the floodgates argument? The Second Circuit hasn't had a decision like this circuit, but it has said so in dicta, and the district courts have followed that dicta, basically. And I've gone back 12 years and had our library and my clerk search Second Circuit opinions, and in those 12 years, only five cases has there been a litigation over whether or not there was exhaustion, because only five cases was it interwound with the merits. I don't see where the floodgates have come up. And if any circuit has pro se litigation, it's this one. And I also look at all of the other barriers to litigation by... You have screening that has to go on. You have to... The defendant has to raise an exhaustion defense. The plaintiff has to counter that exhaustion was unavailable. The complaint survives any motion to dismiss, and that you have a genuine dispute of material fact unrelated to exhaustion to justify. I don't understand the floodgates argument. I appreciate all the steps that you have talked about, Justice Sotomayor. I didn't make them up. They came up from an amicus that pointed them out. Yes. But our Michigan data reflects something a little bit different than the data that you have attempted to collect. Last year alone, Michigan had 574 cases that were opened. In 96 of those, we filed motions for summary judgment. What kind of case? I'm sorry. Just someone claiming... Just prisoner lawsuits. 96 of those, we filed motions for summary judgment on exhaustion. We had four payee hearings or evidentiary hearings on exhaustion. And if those... Under Richard's rule, those four payee hearings would now be trials. All of them were mixed with the merits? I'm hard-pressed to think that. This is an unusual case because this case is about not the rape, but the First Amendment violation. I don't have that granular data, but I will say that... Well, that's not granular. That's the whole case. Well, but a payee hearing would only arise if there were factual disputes. And many of those factual disputes are happening over prisoners asserting unavailability. And if you take that data... I'm sorry. I'm just still confused. It has to do with whether the exhaustion is interwound with the merits of the claim, the underlying claim. What I'm attempting to do is to respond to Your Honor's question about will the floodgates open. And the best that we can tell from us doing payee hearings, if those had to be trials, and many of those are going to be on intertwined facts because that's when payee hearings come up. There are disputed facts, and it tends to be credibility determinations, a he said, she said. And if you take that data from Michigan and you use that even as a national average and you say, well, okay, in Michigan it's four additional jury trials, and across the country for 50 states, that's 200 additional jury trials. That's not municipalities. That's not the Federal Bureau of Prisons. That is a huge, overwhelming estimated number, especially when you consider that last year across the board there were only about 1,300 civil jury trials in all federal district courts. General, may I just ask you this quick question? Under the Prison Rape Elimination Act and your policy, could Mr. Richards go back and now exhaust administrative remedies? Absolutely. There are no time constraints for him to, or for any prisoner across the country that has a Prison Rape Elimination Act grievance. There are no time constraints. So why in this case should we be concerned about intertwinement? You know, if exhaustion is decided by the judge, the judge says you didn't exhaust, the prisoner can go back and exhaust, and then the prisoner can come back to court, and if can get by summary judgment, can have a jury trial. I don't get it. There still is a question with intertwinement here, whether even for the prisoner that can come back, like Mr. Richards, is there a problem with collateral estoppel? Does it violate a right situation? It's not a judgment, and it's a flexible doctrine, and I think every court of appeals but one has said this is a matter for the judge. And what have they said about the collateral estoppel? Haven't they said that the determination that there was no exhaustion would not carry over, would not have an effect on the trial of the merits? I agree. Collateral estoppel is not a bar here, but that's the reason why it's important to consider this, and that's why I believe this question is important. Would the same judge who made a determination in the exhaustion realm related to the facts of whether or not this person exhausted be presiding over the subsequent trial in which those same questions about what happened go to the jury? I don't think there's any rule that would require that the same judge hear that. I'm just asking as a matter of practice. Don't judges ordinarily keep the case? So you have a judge originally, and I guess I'm just sort of musing about Justice Alito's question of what's the harm. I would think that if the concern in Beacon Theaters and in other cases in which the Seventh Amendment right is fronted is that people really have the right to a jury deciding these questions. And once you've had a judge decide it, the same, we have intertwinement, it's the same set of factual issues. I wonder whether there wouldn't be a burden on your right to make your presentation to the jury, especially if the same judge has prejudged those facts because they had the essential hearing and heard all the evidence and whatnot and ruled themselves as to whether or not they think this happened in this way. Two responses. This is a dismissal, and it's typically without prejudice, but that doesn't mean that that's going to come back to the same judge. It's not the same case. They're going to refile a federal lawsuit. So I don't think there's any reason to think that that's going to come back to the same judge. I don't think it matters either way, because the key here, and this is to my second point, is that there wouldn't be any preclusive effect. So would Richard's coming back... Not by the judgment, but you appreciate that what I'm suggesting, that if it was the same trial about an issue of fact that he or she has already decided, because they heard the testimony before, they went through the record, they said, no, Mr. Richards, Officer Perttu did not do X, Y, and Z, and then Mr. Richards goes and exhausts and says, now I'd like my  Would it be difficult for Mr. Richards to present his case to the jury with the same judge presiding? I don't think there's a reason to think it would be the same judge, but even if it were, the jury is deciding that anew, and they are, in that capacity, the ultimate fact finder. And so if on exhaustion there was a particular fact that the judge found, the jury may not even know about that, probably shouldn't know about that. Well, maybe. I mean, the judge is ruling on evidence, evidence, objections, etc., etc., right, in the context, if it is the same judge. Yes, but ultimately the jury is the fact finder on those key facts that Richards would then need for his First Amendment. Ms. Sherman, who bears the burden on the question of whether the Seventh Amendment attaches? What's the standard? Who bears the burden of showing... Oh, it's absolutely the defendant's burden. It's a burden of defense. Well, that strikes me as odd. Wright and Miller, for example, says in cases of doubt, you presume the jury, and it's really incumbent upon those who would displace the jury and say the Seventh Amendment doesn't attach, but the default rule is that you have a right to a trial by jury. Do you have any authority for the contrary? I didn't see it in your briefs. I think what the authority is for the Seventh Amendment not to attach here is that there's no... Who bears the burden of showing? I would have thought you would have borne the burden of showing the Seventh Amendment doesn't attach to a suit at law. I don't... I think that the burden... I mean, isn't the default rule in this country you have a right to trial by jury? That is the default rule once the claim accrues. And so, you know, before the claim accrues, I don't think the defendant... Well, we have a claim. The claim is here. Now, the case has begun, and once the case begins, I would have thought that you would have an assumption, subject to background rules, there are lots of exceptions, but generally you have a right to a trial by jury. If you have some contrary authority for that, I'd like to know what it is. The contrary authority is that this is... Authority. That means a case. That means a statute. That means a piece of history saying that the burden is on the defendant rather than you. I don't have a... Well, I think... I'm not aware of one either. No, I don't have one, but I think two pieces of authority. Let me just put a pin in it there, because then we have cases like Beacon. We have cases like Land v. Dollar. We have cases like Smithers v. Smith, where there are jurisdictional issues or sovereign immunity issues, right? Mounts and controversies. And intertwined, again, default rule is jury. And I just wonder... Now, Congress, maybe it has the power to displace that. Maybe, you know, question mark, maybe, right? But if the default rule through history has always been intertwined issues, go to the jury. And we have a lot of cases. Why shouldn't we, at least as a matter of constitutional avoidance, perhaps, or statutory interpretation, perhaps, read this statute to conform with those normal background principles, absent some contrary evidence from you? I think it is the nature of... The unique nature of PLRA exhaustion. Why is exhaustion different than sovereign immunity or a mountain controversy, then? Maybe that has to be... There is a distinction with those jurisdictional cases in general. And one is that jurisdiction generally, those jurisdictional cases, they are closing the courthouse door, at least practically speaking, to that litigant. Also, there is a collateral estoppel effect to the fact-finding on jurisdiction where that is not true here. It's hard to see those in any of our cases, though, resting on any of that. They seem to be resting on the notion that you have a presumptive right to a jury. In none of the jurisdictional cases was it an issue that was a prerequisite to suit. If Congress can say what has to be proven in order to... But it's not a prerequisite to suit. We called it an affirmative defense. The plaintiff doesn't even have to allege it. So it's not a prerequisite to suit. It's an affirmative defense. And I don't know of any other affirmative defense that we've said isn't subject. And I think this is... Sovereign immunity. Sovereign immunity is an affirmative defense, and we require to go to a jury. This Court said in Porter v. Snuffle that PLRA exhaustion was a prerequisite to suit. But when we got to the issue in Jonas, we said it's an affirmative defense. It's affirmative defense. It doesn't change the fact that it is a prerequisite to suit. Well, whatever it is, right, you have conceded that it's completely intertwined with the merits in this case. Correct? One correction. We have conceded that it's intertwined. I don't concede that it's completely intertwined. Okay. Well, let's just take an example, which is a prisoner says he tore up my grievance papers. And that is the claim. It's also the exhaustion question, right? Because if he tore up his grievance papers, then the grievance process wasn't available to him. So that's the nature of the exhaustion question. But it's as well the nature of the substantive claim, that he tore up my grievance papers in some kind of retaliatory act. Right? So let's say that. Completely intertwined? No. No? There is an intertwining of the fact of whether somebody at the prison facility tore up the grievance. Okay. That's good enough for me.  So the question of exhaustion is going to depend on somebody's finding of whether the warden tore up his grievance papers. And similarly on the merits, it's going to depend on somebody's finding of whether the warden tore up his grievance papers. That is the overlapping fact that exhaustion is also going to look at what was the grievance process? What was the system set up? Were there other avenues? I don't think so, General. I mean, I think if like the warden tears up your grievance papers, somebody is going to say that the exhaustion process wasn't available in the way it should be, according to Ross v. Blake. So in the end, the same fact is going to be dispositive as to both these issues. And let's just stipulate that in some cases that might be, and that that's the cases that we're talking about here. And so then I think that the question that Justice Gorsuch, for example, was asking is, okay, when that is the fact, that's the crucial fact, whether it's Beacon Theatres, whether it's Beacon Theatres plus the default rule of the Seventh Amendment, it should be the jury that decides that question, shouldn't it? And the jury would be deciding that question here, because the jury, when Richard comes back, the jury is going to… But you see, first you have to convince the judge of the exact same fact, because if you can't convince the judge, you can't get to the jury. And so that seems as though, well, if you have to convince the judge before you get to the jury, the jury right doesn't mean all that much. I disagree, because even Moore's Federal Practice has said, when there is a resolution of a preliminary matter, for example, something like exhaustion, it's not a merits decision. You are not deciding the merits. So that seems right as a general matter, because the questions of fact are not so intertwined as a general matter. But where they are so intertwined, so that the question of fact that you're asking the judge to decide is essentially the same as the question of fact that you're asking the jury to decide. In that context, which won't be every context, but in that context, to say that you have to convince the judge that you're right before you get to the jury seems kind of like a flipping of the usual default rule that Justice Gorsuch was talking about. You're convincing the judge of exhaustion, and then because what saves the day is that collateral estoppel wouldn't apply, and so when you're coming back, the jury is fully acting as the fact finder in that case. Thank you, counsel. Justice Thomas? This was dismissed without prejudice. You're not done. Sorry. I'm sorry. This was dismissed without prejudice, right? Yes. So what preclusive effect would that have? Well, it would have no preclusive effect. Mr. Richards can come back, and he can come back. He still has to convince a judge that he has exhausted. And then when it gets to a jury, there would be no preclusive effect. And he would have a complete trial on whether or not his filings were destroyed or his grievances torn up. In part. I mean, he would have a trial, a full trial on his First Amendment claim, and that would include not just whether a grievance was torn up or he was threatened, but the reasons for that, the motives, that there would be a more extensive inquiry appropriate to the First Amendment. Justice Alito? Your Honor, on this issue of the default rule, I thought the Seventh Amendment was limited to suits at common law, and therefore applies only if a particular claim is a claim that could have been asserted at common law or is a close analog to a claim that could be asserted at common law. So, in light of that, I don't know where this idea that there's a default rule in favor of jury trial with respect to every claim for damages, every new claim at law that Congress may create. Am I wrong? I agree that there is no right to a jury trial here on exhaustion. And the reason is, it didn't exist in 1791. The closest analogs we have are equitable defenses that would have been heard by judges and not by juries. Thank you. Justice O'Neill? Counsel, if we limited the rule to your situation, meaning he's not precluded because he can come back because of the law that Justice Alito pointed to, the rape law, I'm not sure that's true, because is he alleging rape or is he alleging First Amendment violation? Under the Prison Rape Elimination Act, First Amendment retaliation for claims of sexual abuse are included. But what happens to the ordinary prisoner? If we announce the rule that you want us to announce, which is exhaustion never goes to a jury, in the mine run of cases that are not rape-related, prisoners are precluded, practically speaking. So, in the case of an ordinary prisoner, we have an amicus brief that says that most exhaustion requirements are, half of them, half the states, are 15 days or less. And in the others, they are matters of days more than that, but no more than 30. Most of the time when you file a suit as a prisoner, the answer takes 30 days. So, most cases, as a practical matter, would be precluded. If we adopt your rule that exhaustion under all circumstances is not preclusive. I don't agree that in most cases the prisoner would not be able to return. I agree that the timeframes for grievances are very short. So, if they're very short, it seems to me, as a practical matter, I can't see how almost any prisoner could go back. You have 31 states, the District of Columbia, and the Federal Bureau of Prisons, all that allow for some level of discretion to excuse untimeliness. Wait a minute. That depends on you, meaning the prison. Why would a prison ever do it? Are you aware of any prison that says, you failed to exhaust, but now you can come back? I assume that when they put it, they don't have to put it in their policy. So, if they put it in their policy, I assume that that's important to them. This is news to me. There is any state that says, if you go to court, they say you failed to exhaust after a factual finding, that we're now going to let you come back to court after you've brought it back to us. Does your state do that? Yes. Yes. We have a provision, and there are many states that have provisions. I'd like you, I'd ask the court to have you give us examples of that situation occurring. I can't provide those examples. You can't because I haven't found one. The policy is discretionary. This policy is discretionary, and the reason that a prison system would want to do that is because everything in the PLRA is designed to encourage, to allow the prison system to work out their problems, and they do want to work those out. So, what you are proposing to me is that they have an exhaustion requirement that they're willing to excuse every time a prisoner goes to court, the court says you failed to exhaust, and now the prison is going to say, come back and we'll let you exhaust now anyway. It will depend on the circumstances, and a lot of these policies say they're extenuating circumstances or good cause. It begs the question that a judge has found that the prison guard didn't stop you from exhausting, and now the state is going to permit you to come back and try again. I think it is in the best interest of the prison systems to try to work out problems, and one of the things that our multi-state amicus brief led by Ohio has pointed out is that under Mr. Richard's rule, if this court adopts it, there are going to be very few prison systems that want to allow for any excusal of untimeliness. That's going to be a disincentive for them to do that, because they've already gone through a jury trial. Now, why are they going to excuse untimeliness? But if a prisoner can go back, and under certain circumstances, they are at the discretion... I'm a little lost. They've gone through a jury trial, they won, and the prison is going to listen to the complaint again? No, if they have a jury trial and they've won... Why would they bother? Why would the state bother having... If there's a dismissal for failure to exhaust without prejudice, the question is whether Richard's rule incentivizes any kind of discretion. If the judge is deciding it, yes. We're on different pages. Justice Kagan? Tell me why this reading of Beacon Theatres would be wrong. Although it talks about preclusion, it's not particularly a preclusion case that you can draw a slightly broader principle from it. Not an all-expansive principle, but the principle would be if, in a particular case, the judge and jury are deciding the same question... would have to decide the same question, and they would have to make the same findings on that question in their respective roles... that, in that case, the jury goes first. And that that's necessary to protect the jury right, and to ensure that the judge doesn't basically make that right, you know, wipe it off the table. Why doesn't Beacon Theatres say that? Beacon Theatres doesn't say that because Beacon Theatres was not dealing with a prerequisite to suit, and then a later legal issue. Here we have... That's true. I mean, that's a factual distinction. And I guess the question is, why should that factual distinction matter if what I said was true? Is that the judge and jury are expected to decide the same questions on the same facts? Whether we label something a prerequisite or an affirmative defense or anything else under the sun, the same problem is being presented... which is that, in that case, it seems as though it's not protective of the Seventh Amendment right, for you have to convince the judge before you can get to the jury. When an equitable and a legal claim arise together, and those claims are now in front of a court fully, that now Beacon Theatres matters. And now preclusion matters. When you have... It does matter. It's everything that this is a prerequisite to suit. Because if the prerequisites aren't met... This court has said, if you have to meet certain prerequisites in order to have your case proceed, and those prerequisites haven't been met, then the case doesn't proceed. This court said that in Woodford v. Nagat. And so it is everything that the case isn't proceeding. And then, when it does proceed, if there is no collateral estoppel effect, preclusion isn't barring the jury from performing full-on their fact-finding role. And that is what the Seventh Amendment preserves, and only what the Seventh Amendment preserves. And here, historically...  Justice Gorsuch? So, if it were impossible to refile, exhaustion not possible, would that change the analysis? No. Because then there would be preclusion, effectively, by the magistrate judge's order, wouldn't there? If, for those prisoners that can't come back, because there has been either a dismissal with prejudice, or because their prison system doesn't allow for any kind of leeway, any discretion... For those prisoners, there still is not a violation of the Seventh Amendment right. Looking back historically, there is no Seventh Amendment right to be preserved. So, preclusion really has nothing to do with it, then, under your theory? It has something to do with the inquiry for those prisoners that can come back. I'm asking about those who can't. You said, same result, despite preclusion. So, something else has to be doing the work. What is that something else? What's doing the work for the prisoners that can't come back is that their claims... They have not met the exhaustion requirements that Congress set forth. Congress can set forth what they have to prove in front of a jury, and Congress, likewise, can set forth what they have to meet in order to get their claims... That's essentially saying Congress can choose to get rid of the jury. And I thought, just last term, in Jharkhasi, where Congress expressly said, no jury trial right. And we said, no. We said, nice policy you have there. We've got the Seventh Amendment here. No good. Now, why would we interpret the PLRA, which is silent about juries, to have a rule that you never get a jury? I agree. I think that has to be your argument. It can't be this exhaustion thing because you want the same rule, whether they're precluded or not precluded. It's got to be that there's a congressional policy, but yet there's none embodied in the PLRA. The congressional policy is in the PLRA. It doesn't... It says exhaustion, but it doesn't talk about juries. Why shouldn't we understand that statute, as we often have, against the backdrop of the Constitution of the United States? It doesn't... Because it doesn't implicate the Constitution. And I... Although the PLRA did not say... Congress did not say, this has to be decided by a judge instead of a jury, Congress was not silent on that issue either. They said, no action shall be brought until... Now, Congress also didn't use the term proper exhaustion. But this court said everything in the PLRA, the language, the way it was structured, suggested that proper exhaustion was what had to happen. Now, you're not disputing in common law somebody could bring a suit for sexual abuse and ask for a jury, right? You don't dispute that. I don't dispute that. And here we have an individual who brought such a claim. And instead of... And demanded a jury of his peers, and instead he got a magistrate judge of Brazil. Because Congress can set what has to be required, what has to be met, in order to get your jury trial right. That is not... That leaves intact the 7th Amendment. And it says you can have sovereign immunity as a defense, and there's certain jurisdictional amounts, and lots of other things. And in all of those circumstances through history, we've said when those are bound up with merits questions, the jury right wins out. We're going to presume the jury. We're not going to go against that presumption, absent something clearer. This court has given district courts, even in the jurisdictional context, wide authority to decide the mode of how to decide jurisdictional questions. And this court has said when it is dependent, and I read Landers' dollar to be pretty much wholly dependent, the jurisdictional question on... You can't answer it until you get to the merits. Then the court has said, you know, it should go to a jury. There is nothing... In the jurisdictional context, especially because the door is closing for that litigant, there's nothing that stops the judge from having that discretion. Here the barrier is the language of the PLRA. Thank you. Justice Kavanaugh? Justice Barrett? Justice Jackson? I'll just ask you about the very last thing you said, because I think the thing that is puzzling me so much about your argument is that even before we had Beacon Theatres, we have the intertwinement principle being articulated in cases like Land versus Dollar and Smithers. And so in Land versus Dollar, which involved sovereign immunity, the court says you have to go to the jury because this is the type of case where the question of jurisdiction is dependent on the merits. In your response to Justice Gorsuch, you seem to say that the case we have before us is not the same. So can I understand why, if, as Justice Kagan points out, the critical fact is, did your client do what he's being accused of doing that resulted in the grievance not being filed? And that's the same fact in both the merits and this exhaustion question. Why is this not one in which both of those are so bound up that you can't separate them out in the way that you would like to? I'm not going to fight with the idea that they're intertwined. I do disagree that they are inextricably intertwined. There are things that have to be decided for First Amendment purposes that don't need to be decided for exhaustion and vice versa. But in the end, it doesn't matter, because what is different here from the jurisdictional context is that jurisdiction itself is different. This court, typically, you know, because this court is not going to be acting ultra vires, is deciding that the different in what way. I mean, you say the reason why exhaustion deserves this special treatment is because it's a prerequisite to suit. Well, so is jurisdiction. You have to convince the court that they have jurisdiction in order to allow the suit to proceed. So I don't understand why that's not the same for the purpose of this. There are still critical distinctions. This court typically is looking is going to try to look at jurisdiction at the outset of the case, but may not be able to be. But this court has the authority and the obligation to revisit subject matter jurisdiction at any time in the case. I don't understand, but we're at the beginning. We're at the beginning, and the obligation at the beginning for all courts in the federal system is to assure that you have jurisdiction before you continue. So we're at the beginning for both jurisdiction and exhaustion, and it involves consideration of a fact that you've said, at least in your briefing, is intertwined with the fact of the merits. I don't understand, first of all, why preclusion. I appreciate that Beacon Theaters has the preclusion language, but this principle, as I'm now talking about it, predates Beacon Theaters. It has nothing to do with preclusion, and so help me to understand how you get around what I'll call land versus dollar problem. There are distinctions with the subject matter jurisdiction inquiry. The court is generally deciding it at the beginning, and the judge is doing it without a jury. It is the rare circumstance where the judge... And we said in this case, when the fact is intertwined, you had to... When it's intertwined, this court still has expressed that the district court has discretion to decide that, but suggests that when it's dependent, it should go to a jury. There's no barrier at that point in terms of this court's jurisdiction to sending it to a jury. Thank you. That's not true with exhaustion. Thank you, counsel. Thank you. Ms. McGill? Thank you, Mr. Chief Justice, and may it please the court. I just wanted to begin with two clarifying points. This is the first time in this five years of litigation that the state has represented that all of the claims might be able to be exhausted. The First Amendment claim that was the subject of the Sixth Circuit's decision here, as far as we can tell, is not protected by the PREA policy. And the Sixth Circuit held that exhaustion and the merits here were completely coterminous under Sixth Circuit First Amendment law. The state also agrees that the historical facts at issue here are of the type that juries decide. And I think that makes this an easy case, the actual question presented, because whatever else is true, this is a 1983 action for money damages. So the jury must resolve those facts regardless of how you characterize exhaustion. That is the point of Beacon Theaters, which is just a specific application of the general rule that even truly threshold issues must be deferred to the jury when they're intertwined with the merits. It's no answer to say that the facts could be relitigated in front of the jury, maybe, if and only if the case proceeds. It's simply not good enough that the jury trial right might sometimes be preserved. And the state's suggestion that judicial findings would not be binding on a future hypothetical fact finder really gives the game away. The only reason that would be so is because of the Seventh Amendment. That was this court's unanimous holding in Lytle, and there's certainly nothing in the statute or the federal rules that would suggest the non-binding factual findings procedure that the state suggests here. The state warrants that having jury trials on exhaustion will undermine the goals of the PLRA. Those very same arguments were presented and rejected in Jones, and they're even less persuasive here. The state's approach would not reduce the number of trials required. We're talking about the cases that have survived judicial screening and Rule 56, the needles in the haystack, as it were. Regardless, policy arguments are no match for the Bill of Rights. I welcome the Court's questions. Are you suggesting that your exhaustion argument has historical analogs? I'm suggesting that this court held in Del Monte Dunes that a 1983 action at law for damages is an action at law for Seventh Amendment purposes. And I think the state has conceded, and we submit as well, that there is no precise historical analog for the specific theory of the affirmative defense in this case. And I think Del Monte Dunes tells you that when that is so, you look to the functional considerations. The divide between the judge and jury and predominantly factual issues are for the jury as a default rule. Why isn't it enough for you to get the right to a jury after an exhaustion determination if that determination is non-binding? Two things. I'm not sure why it would be non-binding. But the second is, in this lawsuit, Mr. Richards got past summary judgment on a theory of unavailability under Ross v. Blake and a First Amendment claim that the Sixth Circuit said stated a prima facie case for First Amendment retaliation. He got to the point where he should have had a jury decide that. The Seventh Amendment can't turn on whether, after dismissal, a pro se plaintiff might be able to file lawsuit 2.0 on some of these claims. Well, why not? I mean, if the prior determination without a jury is not binding, what exactly has been taken away? If you can proceed to litigate before a jury with respect to exhaustion, what's the great loss? Other than time, of course, but he's got time on his hands, right? Of effort. It's no small feat for a litigant like Mr. Richards, who was representing himself throughout these proceedings until the Sixth Circuit appointed counsel, to even get a case filed before a court and all the way past summary judgment. So I think that's a significant consideration. But our second point is that I think the modern restatement of judgments would say that once an issue is finally decided, the words without prejudice are not magic words that mean that nothing has actually been decided. And I don't think the state would take the position that in this hypothetical lawsuit 2.0, Mr. Richards could re-argue the very thwarting facts and allegations that were the basis of both the unavailability claim and the First Amendment claim. Counsel, can I ask you a question? This is a methodological one. In some ways, this case presents the problem that we've seen in the Second Amendment context, because this is a history and tradition test, but it's one that goes all the way back to just a story in 1812, right? And in other cases, we've been able to draw analogs based on the cause of action. And I think that's a more or less stable line when you're trying to find a historical analog. Is this more like a common law or an equitable question? This defense thing is a lot harder, right, especially since there was no really good analog at the time of the founding. So I think what we have now is Congress coming up with something new, and then what do we do in the face of historical uncertainty? And, you know, functional considerations may guide, but I guess what I'm trying to figure out, and this is really just a question, I mean, it's true, as you say, that one set of circumstances we could look at in making a judgment about whether this goes to a jury or has to go to a jury if he invokes the Seventh Amendment right is the factual nature of it. Another one, though, is does Congress have some room here to create new defenses that are functioning more as equitable, like these threshold questions? And it seems to me like in Wetmore, the court did, even though jurisdiction was a jury issue in the beginning, to kind of back off a little bit and said, well, you know, a judge has discretion to go one way or another based on the 1875 Act that didn't lock in the form of pleading. So, I mean, I guess my question is, in the face of historical uncertainty, how do we weigh what Congress has to say about threshold considerations? Because it is clear that in the PLRA, exhaustion was designed to try to weed out suits. I'm not saying that that's determinative. I'm just trying to figure out how to think about it. I think I understand the question. I mean, I think most of your question is sort of answered by the detailed analysis of the majority opinion and Justice Scalia's concurring opinion, which the majority said that they agreed with in full in Del Monte Dunes. And there, I mean, history certainly was the guide and provided the analog, which is a common law, you know, tort claim for damages, with the historical analog that allowed the court to say no question that a 1983 action for damages is an action at law. And so the question is, you know, what work does the history do on this specific issue question? And I think the court resolved that by simply saying, well, we don't have a guide. We look to precedent and then, you know, functional considerations. And the court described those functional considerations as preserving the jury's historic role as the trier of fact. So I think it's sort of a well-worn path. And the only thing I would add is that this court last term in Jercosy pointed out that Congress can't sort of take an action at law and morph it into something else by tweaking its elements or adding something or narrowing it in some respect and then just saying, hey, this isn't actually the common law. But in Jercosy, I agree. But in Jercosy, we drew an analogy to fraud and said, like, this is fraud. It's analogous to fraud and that it had an analog. And here the problem is we don't have that same line. And I'm not saying that you lose. I'm just saying we haven't had a case quite like this where we had to make that methodological choice, which does make it a bit different, and I think what more does complicate the issue a little bit for you. So I think if you wanted to take a slightly more circuitous route than what Justice Scalia and the majority did in Del Monte Dunes, what you would say is we have this action at law. There's no specific analog, but you could still look to history to see, for example, well, what are the types of, you know, would a jury have gotten to decide factual issues with respect to an affirmative defense in this type of tort action in common law? We think that historical answer is very clear. So even though there wasn't an affirmative defense called exhaustion in 1791, there were affirmative defenses to tort liability of damages, including the statute of limitations. And we know that juries decided factual disputes with regard to an affirmative defense. Well, along those lines, I want to understand the implications of what you are asking the court to hold. So in Judge Posner's decision in Pavey, I know you think his logic is nonsense. He kicked off a number of other questions that are threshold issues that are not necessarily decided by the jury. Subject matter jurisdiction, personal jurisdiction, abstention, forum nonconvenience, venue. What would be the implications of a decision in your favor here on all of those? Potentially very little to none. Well, if there's an overlap between the – wouldn't the logic apply there, or why would it not? It would. It would, Justice Alito. I think the general rule, the rule that is applied by the federal courts almost uniformly, I think uniformly and the state doesn't really take issue with it, is where you have a common factual issue. So you have real intertwinement with the merits. Even so-called matters in abatement or judicial administration get deferred to the jury. And that is because we're preserving the jury's historic role to resolve factual disputes. I don't know that we've ever – I don't think we've ever held that, and I don't know that the lower courts say that that always has to be done. Let me ask you another question about the implications of this. What about other exhaustion requirements that are connected with a claim that may have a 1791 analog? So something that occurred to me – maybe this is completely off base, but it did occur to me. What about exhaustion under Title VII? So that has never been considered to be a jury issue. Now there is a right to a jury trial on the Title VII claim. Congress has extended it, but there's an argument, commentators have made the argument, that the Seventh Amendment would also cover that because a claim for unlawful termination would have some 1791 analog. So what about that? If I understand the question correctly, you're asking about exhaustion in the Title VII context and whether there would be a jury trial, right? I mean, Judge Posner, four years after Pavey, wrote a decision saying exactly that, that because Title VII exhaustion is very similar to the statute of limitations and is an affirmative defense, there's no basis in the statute or history to treat it differently than another affirmative defense for Seventh Amendment purposes. So actually, at least the Seventh Circuit and several other circuit decisions that we cite in our brief have treated that as a jury trial issue regardless of overlap. But do we really have to take a position as to whether or not exhaustion is a jury trial issue? I mean, I may be confused, but I thought intertwinement was really the principle that was doing the work here so that we could assume for the purpose of this argument that exhaustion does not have a jury trial right attached to it, but your friend on the other side has conceded that it is intertwined with a claim that has a jury trial issue. So in that situation, we're not touching any of the cases that Justice Alito mentioned or making a determination about whether there's an analog to exhaustion. We're assuming for the moment that there is no jury trial right on the exhaustion issue and speaking to what happens with respect to intertwinement. Is that right? That's right, Justice Jackson. You could, and we think in most cases you would normally, just suggest the question presented, which is about intertwinement. We did brief the broader issue, but that is principally because of the way the state briefed it as well. Wouldn't one even need to go that far? I mean, you've got to make this brief, and others have pointed out there's a long federal policy of background, almost federal common law, or at least an interpretive of the statute, constitutional avoidance concerns, unless Congress speaks more clearly, we're not going to assume it took away the jury trial right in cases of intertwinement under the PLRA. I think that's also right. I mean, Congress didn't speak to this issue, and you could hold consistent with your opinion in Jones v. Bok that Congress's silence means that the ordinary procedure should apply, and in this case, the ordinary situation is that disputed facts about affirmative defenses that are intertwined with the merits go to a jury. We get to functional considerations that Justice Barrett was raising. It does seem to me like you would look at the policy of the PLRA. The Court has said to look to statutory policies, and that policy seems quite inconsistent with a jury trial right on the exhaustion question, because the whole idea of exhaustion was to be speedy, to have the prison be able to resolve things quickly, and it seems just, you know the argument on the other side, just seems generally inconsistent with the policy of the PLRA. Do you want to respond to that? Sure, Justice Kavanaugh. Two points. I mean, the state relies, I think, principally upon a 1966 case called Katchen v. Landy that has some language that sort of suggests that congressional policy can be relevant to functional considerations. I think the Court has moved significantly away from that, and after cases like Granfinanciera, I'm not sure about the continuing viability of Katchen v. Landy. But the other thing is that— What about Markman? I mean, Del Monte Dunes was an application of Markman itself, and I think that this case, if you have a spectrum from sort of pure historical facts to legal issues, Markman is sort of on one end, and our case and Del Monte Dunes are on the other, that we're not talking about construing a legal term of art in a legal instrument. I would have thought that if Congress was thinking about this as requiring the judge to make a determination to supplant the jury trial question, the PLRA does have a list of things that a court has to do without objection. It has to look at the complaint and decide whether any immunities apply, whether a bunch of other things that it requires. Grievance is not one of them. That's right, Justice Sotomayor, and that was part of the Court's holding in Jones when it determined this is an affirmative defense. I mean, to be clear, there are other things that Congress could do but hasn't done to narrow the scope of cases that can get past Rule 56 and require a trial. But once an issue is made, to use the language from Telabs, once a genuine issue of fact is made under whatever the requirements are in the statute, it goes to the jury, and I don't think Congress has anything to say on that. So on this antecedent question of whether you're entitled to the jury trial right in the first place because of the analog, because of the historical considerations, what have you, no circuit has held that right. We would be kind of treading into new territory that's different. I mean, it goes beyond the QP. It was briefed that way, and let's just assume if you lose on the intertwined question, you could still win if we decided that the defense was entitled to a jury trial regardless. That didn't depend on factual intertwinement. But isn't it the case that that would be striking significantly new ground? In some sense it would, and in some sense it wouldn't. I think the problem with the current state of the law, frankly, is that the first decisions on this after the PLRA was enacted came about in the early 2000s. I think it was a Ninth Circuit case called Wyatt, and it was before this court decided Jones. And the court just sort of referred to exhaustion as a matter of abatement or a rule of judicial administration without really thinking through what that means. And the courts have not reconsidered those decisions in a meaningful way after Jones. So true. I'm not saying that they've gotten it right. That's kind of an argument for, hey, they've done this reflexively, or they all followed the first court to answer the question. But we don't have cases where circuit courts or courts of appeals have reflected on this issue and said, here are the historical analogs and the reasons why it comes within the Seventh Amendment, or here are the functional reasons why it does or it doesn't. We would be doing that for the first time, right? You would, and I don't think it's that different than what you did in Jones, although there were a couple circuits on the court side. But I think that there's a pretty well-worn path between what you've held in Jones and what we know from Del Monte Dunes and other cases. Why would we do that, though? I mean, just to follow up on that question, that seems like a big question. A lot of questions from my colleagues have pointed out the historical uncertainty. I guess I'm not certain why, as a matter of prudence, we would leap into something like that without lower court opinions, et cetera. Yeah, I mean, it would be contrary to the court's normal sort of preference to decide only what must be decided. I think the only reason you would do it is if you thought the law is so clear that it's actually the simpler path to resolution, and it would clarify the confusion that would otherwise still exist in the courts of appeals and the district courts. Well, we would have to do it if we don't rule in your favor on the limited Bacon Theaters question, meaning if we say that Bacon Theaters doesn't control here for whatever set of reasons we make up, then we would have to reach your alternative argument that there's a set of... we would have to basically be saying there's no... You would be saying, in effect... I mean, it's hard for me to sort of figure out what the opinion looks like that rules against us on intertwinement but rules for us on the broader opinion, to be honest, but I think you would have to be saying something like, well, I'm not even going to sort of guess. I don't see how we get around Bacon Theater, rule against you, and not, by definition, answer the broader question. Right. I mean, because if you don't think that Mr. Richards has a right to a jury on his First Amendment claim, it seems unlikely to me that you're going to rule for him on the broader question. Well, he has a right to a jury on his First Amendment claim, assuming that his suit is not barred for failure to exhaust. But if we want to decide this case on narrow grounds, if, in fact, he can go back and exhaust now, I think Bacon Theater is completely out of the picture. Bacon Theater is either about collateral estoppel, and in my view, that's what it was about, or it's a rule of equity and has nothing to do, essentially, with the right to the Seventh Amendment, right to a jury trial. If it weren't about collateral estoppel, the judge could have... The two claims could have been tried. They both could have been tried. It wouldn't matter which order you did it in. You try whichever one you want to do first, and then you try the other one. If it's a rule of equity, then a rule of equity is different from anything that's protected by the Seventh Amendment. So I think this court's unanimous opinion, and Lytle referred to it as a constitutional mandate, that Lytle's Seventh Amendment rights could not be protected except for a remand on a clean slate with a jury trial on all the issues that had already been decided by the court. And it did that. It sort of declined to apply collateral estoppel, which is, I think, the solution the state is proposing here, only because otherwise the Seventh Amendment would be violated. But this court has solved that problem by saying, ex ante, we want to avoid judicial fact findings that are going to extinguish legal claims. So we're going to make sure the jury goes first. And it doesn't mean that there's exact, perfect, coextensive intertwinement. It's enough that the judge decides a fact that the jury would have to decide the other way in order to prevail on the merits of the claim. Well, as you present this, this may not be just a case about the right to a jury trial on the issue of exhaustion under the PLRA when there's intertwinement, because it may have a lot of other implications. And we don't know what the implications are of the logic of the argument that you're presenting as to all of these other threshold issues that Judge Posner set out, as to other statutes that have exhaustion requirements. You're really asking us to, and go against the consensus so far of the courts of appeals, you're really asking us to take a big step. I think with respect, Justice Alito, it would be a very small step if you wrote your opinion and just affirmed the Sixth Circuit on the ground of decision there. But the only appellate opinion I am aware of that disagrees on the basic intertwinement issue is Judge Posner's opinion in Pavey. And so with respect, we don't think it would be a sea change in the law to rule on the narrower question presented here. I think one concern is that even if we ruled that narrowly, it still has a big effect on PLRA litigation. In other words, that it's easy enough for any prisoner to essentially evade the exhaustion requirement by pleading his claims in the right way and ensuring that the case immediately goes to a jury. So what do you think about that? Sure. I mean, to the extent there are concerns about a roadmap, it already exists, right? This trial, I mean, this case got through Rule 56. There was going to be a trial. So I'm not sure that the incentives are any greater from a roadmap perspective. I mean, also, this court doesn't usually fashion constitutional rules assuming that litigants are going to perjure themselves or fabricate evidence to get past Rule 56. So I don't think it should do so here. And the other point I would just make is that this has been the rule in the Second Circuit and the First Circuit more recently for more than a decade. There hasn't been a flood of litigation. In fact, the data show that the cases filed and the trials have gone down in those districts. I found one case that's actually going to trial in the Southern District of New York on exhaustion, an intertwined case. This has not been a big problem in the last, you know, 30 years that we've had the PLRA. Well, suppose you have a prisoner who's serving a lengthy prison sentence and files a grievance and the state says, well, you didn't exhaust. So the prisoner says, well, yeah, I did exhaust. I put the grievance in the box or I handed it to a guard. So at a minimum, he gets a trip to the courthouse. He gets a trip out of the prison. Well, in our client's case, everything was pursued. I'm not talking about your client. I'm talking about other prisoners who may want to take advantage of this. I mean, I don't think that's a... So that is a genuine dispute of material fact about whether, you know, is he telling the truth? Is he not telling the truth? I mean... Is he really going to fear that on top of everything else that's happened, they're going to bring a perjury prosecution against him? I think this is not a new problem, right, and that the rule that the Sixth Circuit adopted isn't really relevant to whether a case is going to pass, you know, screening and all of these other hurdles and get past summary judgment. We're talking about the very few cases that get there, and district courts are well-equipped to decide whether there's a genuine issue of material fact, even in prisoner litigation. Thank you, Counselor. Justice Thomas, anything further? Thank you, Counselor. Rebuttal, Ms. Sherman. Thank you, Mr. Chief Justice. All claims, including First Amendment claims here, stem from the sexual harassment claim, and the PREA grievance policy for the MDOC includes First Amendment retaliation. That's in Joint Appendix 7273. Mr. Richards, contrary to my friend's argument, can re-argue facts if he exhausts and gets in front of a jury again, and that is crucial here to preserving the Seventh Amendment, even if this Court believes that the Seventh Amendment is somehow otherwise implicated. Addressing Justice Barrett's questions about discretion, what more does the key and what more is the discretion that is given to the district court judge? Here, that discretion that, you know, based on historical considerations and based on especially the functional considerations here, the fact that there is no precise analog based on the functional considerations and the goals of the PLRA, that discretion should, in every case, it would be no discretion, whereas that is what drove the jurisdictional decisions in Wetmore and other cases. Justice Kagan, you asked about a roadmap. It would be very easy for prisoners to create disputes of fact that turned on credibility. A he said, she said, where those cases would have to go to a jury, and I think even if there aren't floodgates open now, they will be open under Richards' proposed rule, because it is not hard for a prisoner to do that. As this court said in Woodford v. Nagat, not all, sometimes prisoners file claims in bad faith, and if they want to make trouble for a corrections officer they don't like, or they want to get out of their cell and have arrest, but these are the court's words, not mine, they will file in bad faith, and you are incentivizing them to add facts that will get them to a jury. On a final point, it is the nature of exhaustion as a prerequisite that leaves the Seventh Amendment intact here. Because the Seventh Amendment doesn't guarantee that claims get to a jury, it applies once the claims get to a jury. And here, once the claims are getting to a jury, because exhaustion has been met as Congress intended, Mr. Richards and other prisoners will have their day in court. Thank you. Thank you, Counsel. The case is submitted.